# U. S. DISTRICT COURT.

## THOMAS McLAUGHLIN agt. THE ALBANY AND RENSSELAER IRON AND STEEL COMPANY.

### *Bill of lading — Demurrage.*

Where a bill of lading contains a clause that in case the consignees of a cargo shall discharge the same they shall charge the master not to exceed ten cents per ton, and have four full working days to discharge the same after notice of the arrival of the boat at their dock, and to pay the master for any time the boat is detained for discharging, after the expiration of said four days, five dollars per day, and at the same rate for portions of a day:

*Held,* that the consignees had an election, upon the arrival of the boat, whether they would themselves unload the cargo or require the master to unload it. Primarily it was the duty of the master to unload the cargo.

Where in such a case the consignees upon the arrival of the boat offered the master dock room, though without special facilities for speedy and economical unloading, and notified him that they would not unload the cargo except he would wait his regular turn, and would not pay him demurrage:

*Held,* that this was notice to the master that the consignees elected not to unload the cargo except in its regular turn, and that the master, after such notification, having seen fit to wait his turn was not entitled to recover demurrage.

*Southern District of New York, July,* 1881.

IN ADMIRALITY.— This was a libel for freight and demurrage growing out of the detention of the canal boats "O. K." and "Leon" ladened with cargoes of coal consigned to the respondent. The amount claimed for freight was admitted, and the only question litigated was that in respect to demurrage. It appeared by the testimony that the respondent's dockmaster

NOTE. — The case of *Tuttle* against the same respondent, referred to in the foregoing opinion, was also a libel in admiralty in the district court of the United States for the southern district of New York, and the facts were substantially the same as in the above case, except that it appeared, among other things, that there was quite an accumulation of boats at the

McLaughlin agt. Albany and Rensselaer Iron and Steel Co.

notified the masters of the boats on their arrival that dock-room would be furnished if they wanted to unload themselves, but that if the respondent unloaded them they would have to wait their regular turn, and that the respondent would not pay them demurrage however long they might be detained. It also appeared that a printed notice to the same effect was posted conspicuously at the scales on the respondent's dock. It also appeared that the masters refused to unload their own boats unless the respondent would pay them all it might cost them in excess of ten cents per ton. It was admitted that dock room was offered and that it was declined.

*J. A. Hyland,* proctor, for libellant.

*Holbrook & Smith,* proctors, for respondent, cited the following cases: *Western Transportation Co.* agt. *Hoyt* (69 *N. Y.,* 230); *Shaw* agt. *Republic Life Ins. Co.* (69 *id.,* 286);

respondent's dock ahead of the libelants waiting to be discharged, and that such accumulation was owing to a break in the canal.

*Welcome R. Beebe,* proctor, for libelant.

*Holbrook & Smith,* proctors, for respondent.

CHOATE, *J.* — This is a suit to recover demurrage for detaining the libel-ant's canal boat beyond the time allowed by the bill of lading for discharging her cargo of coal. The bill of lading which was dated September 8, 1875, acknowledged the shipment of the coal at Watkins, N. Y., "to be delivered addressed without delay in like good order as received, subject to the following conditions:" * * * "In case the consignee discharges the cargo, or any part thereof, he is to charge the master not to exceed twelve and a-half cents per ton for the same, and to have four full working days after due notice of the arrival of the boat at the dock of the consignee in which to discharge cargo, and to pay the master for any time (exclusive of Sundays and all legal holidays) the boat is detained by said consignee for discharging after the expiration of said three days at the rate of ten dollars per day. The master to furnish men to attend guy on boat while unloading." The consignee named was the defendant, "*The Albany and Rensselaer Iron and Steel Company, Troy.*" The boat arrived at defendant's dock in Troy, and the master reported his arrival to the defendant on the fifteenth day of September, at seven o'clock in the evening. The discharge of the cargo was commenced on

McLaughlin agt. Albany and Rensselaer Iron and Steel Co.

*Hurley* agt. *Brooklyn Ice Co.* (14 *Blatch.*, 522); *The M. S. Bacon* agt. *Erie & W. Trans. Co.* (3 *Fed. Rep.*, 344); *Bjork- quist* agt. *Steel Rails* (3 *id.*, 717); *Gage* agt. *Morse* (12 *Allen*, 410); *Sprague* agt. *West* (*Abbott Ad.*, 548) *The Hyperion's cargo* (2 *Lowell*, 93).

BROWN, J. — All the claims in this case are agreed upon except as to claim for demurrage. This claim arises upon the following clause in the bill of lading: " In case consignee discharge cargo, or any part thereof, they are to be charged not to exceed ten cents per ton, and to have four full working days after notice of arrival at dock, of consignee of said boat, in which to discharge cargo, and to pay master for any time (exclusive of Sunday) boat is detained for discharging, after the expiration of the said four days, five dollars per day, and at the same rate for portions of days." The decision of this court in *Tuttle* against this defendant upon a bill of

---

the twenty-third of September and finished on the twenty-fourth, at four P. M. The cargo was discharged by the respondent's servants, and by the use of their derricks. There is some conflict of evidence as to what took place between the master and the defendant's agents on his arrival and reporting in respect to the discharge of his cargo. His testimony is that he was only told that he was to wait his turn to discharge, that after his discharge, when he received his freight money, he demanded his demurrage, which was refused, but that he was told that his taking his freight would make no difference about the demurrage. He signed a receipt in full of all demands. It is shown, I think, by the testimony of the employees of the company in connection with the receipt, that on his arrival he was assigned dock room where he was told he might discharge his cargo, and that he was also told that if he wished the company to discharge him he must wait his turn, and in that case that they would pay no demurrage, and that he declined to discharge himself and voluntarily waited his turn. And it is not proved that when he received his freight he claimed demurrage. It was shown that there were a large number of boats waiting to be discharged by the company. That the company had derricks arranged for discharging boats which they discharged; that there was plenty of dock room to discharge, but no derrick that was not in use by the company. The cause of the accumulation of boats at that time was that there had been a break in the canal. He now claims three days demurrage amounting to thirty

lading, substantially identical with this (*see opinion of* CHOATE, *J., May* 23, 1879), is, I think, controlling in this case.

It was there held that upon such a bill of lading as this, the defendant had an election upon arrival of the boat, whether it would itself unload the coal or require the master to unload, as it was otherwise his duty to do.

On arrival the captain was, in this case, notified that the defendant would not unload the boat except in its regular turn, and in that case would pay no demurrage, and a berth was offered the captain where he could himself unload, if he did not accept that offer. The captain declined this offer unless he could have such additional facilities for unloading as defendant had at its own dock, or unless defendant would agree to pay the increase of cost over ten cents per ton. These things the captain had no legal right to ask for. He seems to have supposed that he had a right to be unloaded at ten cents per ton. The case above cited holds that it was, primarily, the captain's duty, under this bill of lading, to unload the cargo, and in offering him a berth, though without special facilities for speedy and economical unloading, the

dollars. The question turns on the proper construction of the bill of lading, and the effect on the rights of the libelant of what took place between him and the company in reference to the discharge of the cargo. The fair construction of the bill of lading is that if the company should elect to discharge the cargo instead of leaving the master to discharge himself, the demurrage should be paid. The bill of lading imposed on the master the obligation to discharge. It modified that obligation only so far as it gave the company the privilege of discharging if they saw fit to do so. What took place was not an election on their part to discharge the cargo except for the master and as an accommodation to him. The acts of the master in taking his freight money and receipting for all demands in full, seems to show that he so understood the agreement. The boat was not detained by the consignee, therefore, within the meaning of the contract, but by the master himself. At any rate it was competent for the parties to vary the contract as to demurrage, and it is evident from the testimony that the captain was contented to do so in the circumstances in which he found himself placed. From the evidence it is not unlikely that he concluded that the loss of two or three days was of less consequence to him than the greater trouble and expense involved

McLaughlin agt. Albany and Rensselaer Iron and Steel Co.

defendant discharged all its legal duty upon the arrival of the boat. This offer of a berth is sworn to by the defendant's witnesses, and the captain of the boat distinctly admits such offer, and his refusal to unload except upon the terms stated. After this refusal the defendant was not required to make any further tender of a berth.

The defendant's notice to him was a rejection of their right of election to unload under the bill of lading, and the subsequent delay was by the captain's own choice and for his own convenience and economy. Rather than incur the increased expense of unloading without machinery or power, the captain chose to await his turn and enjoy the advantages of defendant's special facilities for unloading. After the notice given him he had no right to wait and take advantage of defendant's improved facilities, at their expense, nor avail himself of their facilities except upon the terms expressly stated to him, viz.: that no demurrage should be paid. His claim that he would charge for demurrage, which the defendants told him would not be paid, could not impose upon the defendant any liability which they were not already under. The final unloading

in discharging his cargo without being able to use the facilities which the company had for doing the work.

Libel dismissed with costs.

The case of *Thorne* agt. *Henry Burden & Sons*, decided at the general term of the supreme court of this state for the fourth department, not reported, is also in point and was cited by the respondent in the foregoing cases. The action was brought to recover freight and demurrage. It was conceded that the defendants were liable for the balance of freight, but denied that they were liable for demurrage. The facts relating to the question of demurrage were as follows:

The plaintiff was employed by the Morris Run Coal Company to transport a boat-load of coal from Watkins, N. Y., to the defendants at Troy. The defendants had derricks upon their dock with which they were accustomed to unload coal upon its arrival. It was voluntary on their part whether they did so or not, but when they did so they unloaded boats in the order of their arrival, and charged for unloading. Upon the arrival of the plaintiff's boat at defendants' dock there were several other boats there loaded with coal which had arrived previous to the plaintiff's, and some of them were then unloading. The plaintiff's captain reported him-

McLaughlin agt. Albany and Rensselaer Iron and Steel Co.

of the boat by the defendant in their turn, cannot be construed as done under the election contained in the bill of lading; but as a subsequent favor to the captain, independent of the bill of lading, and imposing no liability under it.

The libelant should have judgment for the amount tendered and deposited in court (*i. e.*, the freight money), with costs, prior to the tender to the libelant, and with costs since the tender, to the respondent.

self to the defendants and requested to be unloaded, and was told by them that if they unloaded him he must "wait until the boats in advance of him were discharged." There was ample unoccupied dock room at said dock where plaintiff might have discharged, and the captain was informed that he might discharge his cargo himself or wait his turn at the derricks and be unloaded by the defendants. He chose the latter course and waited several days until his turn came, and was then discharged by the defendants. He then claimed demurrage for this delay. The action was tried before a referee, who reported in favor of the plaintiff. The defendants appealed to the general term. The opinion at general term was delivered by MULLIN, J., and upon the question of demurrage is as follows:

\* \* \* "The defendants did not prevent the plaintiff from unloading his cargo, and they were not liable for demurrage or damages in the nature of demurrage. When the plaintiff elected to have defendants unload the boat he elected to have it done according to the usual course of business, which was to unload boats in the order of arrival, and it is proved that plaintiff's boat was so unloaded."

The claim for demurrage was accordingly disallowed.